UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT J. MASSEY,

    Defendant.
_____/

Case: 4:20−cr−20615
Assigned To : Leitman, Matthew F.
Referral Judge: Ivy, Curtis, Jr
Assign. Date : 12/21/2020
Description: INFO USA V. MASSEY (NA)

Violation:
33 U.S.C. § 1319(c)(2)(A)

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

## GENERAL ALLEGATIONS

1. At all times relevant to this Information:

2. Defendant Robert J. Massey, through a business known as Oil Chem, Inc., ("Oil Chem") owned and operated an industrial facility located at 711 West 12th St., in Flint, Michigan (the "Oil Chem Facility"). Defendant Massey was the president and owner of Oil Chem.

3. The Oil Chem Facility processed and discharged certain oily industrial wastewaters and sold oils and other chemicals to industrial facilities. Oil Chem's wastewater discharge permit authorized Oil Chem to dispose of treated oily wastewaters from the Oil Chem Facility to a municipal wastewater treatment plant operated by the City of Flint. Operations at the Oil Chem Facility also

1

included the disposal of landfill leachate received by tanker truck from landfills in Michigan. Oil Chem's wastewater discharge permit did not authorize Oil Chem to dispose of landfill leachate from the Oil Chem Facility to the municipal wastewater treatment plant operated by the City of Flint. Oil Chem received revenue from the disposal of landfill leachate and industrial wastewaters.

4. Landfill leachate refers to any liquid, including any suspended components in the liquid, that has percolated through or drained from a landfill. Solid waste landfills collect precipitation that has percolated through landfilled garbage using leachate collection systems installed underneath the landfill. Landfill leachate typically contains a variety of chemicals that may be hazardous to human health and the environment.

5. Between in or about January 2007 and in or about October 2015, defendant Massey knowingly accepted, and directed his employees to accept, landfill leachate at the Oil Chem Facility. Defendant Massey also directed his employees to dispose of the landfill leachate through a hose from a tank to a sanitary sewer drain located at the Oil Chem Facility, without treatment and in violation of Oil Chem's wastewater discharge permit. This sanitary sewer drain was connected to the sanitary sewer system of the City of Flint, Michigan, which directed wastewater to a municipal wastewater treatment plant operated by the City of Flint.

6. Defendant Massey knew about, condoned, and authorized the practice of discharging landfill leachate to the sanitary sewer system of the City of Flint from the Oil Chem Facility.

## STATUTORY AND REGULATORY BACKGROUND

7. The Clean Water Act ("CWA"), 33 U.S.C. § 1251, *et seq.*, establishes the basic structure for regulating discharges of pollutants into the waters of the United States. It gives the United States Environmental Protection Agency ("U.S. EPA") the authority to implement pollution control programs such as the setting of wastewater standards for industry. The purpose of the CWA is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters. To control water pollution and accomplish the objectives of the CWA, Congress established within the CWA statute a nationwide permit program called the National Pollutant Discharge Elimination System ("NPDES"), which regulates and limits discharges of pollutants into the Nation's waters. Essentially, the CWA's NPDES provisions require that all industrial sources that discharge pollutants to waters of the United States must obtain a permit under the NPDES program. 33 U.S.C. §§ 1311(a), 1342; 40 C.F.R. § 122.1(b)(1).

8. Municipal wastewater treatment plants comprise one category of industrial sources of water pollution. These facilities are referred to as "publicly-owned treatment works" or "POTWs" in the regulations promulgated under the

CWA by U.S. EPA. 40 C.F.R. §§ 122.2, 403.3. POTWs receive and treat wastewater from residential households and industrial facilities, which discharge wastewater from their processes into the municipal sewer systems of POTWs. Typically, wastewater is delivered to a POTW through the pipes and other conveyances that comprise a sewer system, and these are considered part of the POTW's treatment works under federal regulations. 33 U.S.C. § 1292(2)(A); 40 C.F.R. § 403.3(q). After treating all incoming wastewater from both domestic (residential) and industrial sources, a POTW discharges the treated wastewater into a receiving water of the United States. Those discharges from a POTW are regulated by an NPDES permit.

9. Under the CWA, U.S. EPA promulgated regulations governing the introduction of pollutants into POTWs by industrial users of the sewer system. These requirements are known as federal pretreatment regulations. These standards generally require industrial users to: (a) "pretreat" their wastewater before discharging it to the sewer system; and (b) periodically sample and test their discharges to ensure that they remain in compliance with U.S. EPA and POTW pretreatment discharge limitations.

10. Because POTWs discharge treated wastewater to "waters of the United States," they must have a CWA NPDES permit authorizing such discharges. 33 U.S.C. §§ 1311, 1342. The municipal sewer authorities that operate

such treatment plants are required by their CWA NPDES permits to develop a POTW pretreatment program; as part of such programs, the sewer authorities are required to enact and enforce sewer use ordinances that limit the amount of pollutants which industries are allowed to discharge into the sewer system. 33 U.S.C. § 1342(a)(3), (b)(8).

11.　Once approved as a local POTW pretreatment program by U.S. EPA or a delegated State, sewer use ordinances are federally enforceable under the criminal provisions of the CWA. Knowing violations of a POTW's federally approved sewer use ordinance are crimes under the CWA. 33 U.S.C. §§ 1319(c)(2)(A), 1342(a)(3), 1342(b)(8); 40 C.F.R. § 403.8.

12.　The City of Flint owns and operates a POTW with a wastewater treatment plant that receives and treats wastewater from industrial and residential sources in the greater Flint, Michigan, area. The City of Flint's POTW discharges treated wastewater from its POTW to the Flint River under an NPDES permit.

13.　The City of Flint administers and enforces a POTW pretreatment program that was approved under the CWA by the State of Michigan's Department of Environmental Quality ("MDEQ") originally in or around March 1985, with subsequent approvals of revisions to the POTW pretreatment program. The City of Flint's approved POTW pretreatment program includes a sewer use ordinance entitled, "Use of the Publicly Owned Treatment Works." *See* City of Flint,

5

Michigan Code of Ordinances, § 46-142, *et seq.* Because this sewer use ordinance was approved by the MDEQ (the official CWA Approval Authority) as part of the City of Flint's POTW pretreatment program, the terms of the sewer use ordinance are federally enforceable as pretreatment standards or requirements.

14. Section 46-143 of the sewer use ordinance defines "User" to mean a person who discharges into the POTW, and "Significant Non-Domestic User" to mean, in relevant part, any non-domestic user of the POTW that has a reasonable potential for adversely affecting the POTW. Section 46-151 of the sewer use ordinance, entitled "Use Permits," states in pertinent part that "[a]ll significant non-domestic users . . . must have a use permit to discharge to the POTW."

15. The City of Flint issued to Oil Chem sewer use permit number 5-04-02-01-O031, which was periodically reissued with new effective dates. Relevant to the Information, Oil Chem submitted a Sanitary Sewer Use Permit Application to the City of Flint on or about October 15, 2008. As part of the permit application, defendant Massey, as the Authorized Representative of Oil Chem, signed and certified the veracity of the application, with the following statement:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel proper[l]y gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible [for] gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I

6

am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

16. Oil Chem's 2008 application described the production processes at the Oil Chem Facility as including the blending of industrial lubricants and cutting fluids; blending of industrial cleaners; packaging and shipment of those materials; transport, collection, treatment, and discharge of oily waste water; and reclamation and reuse of oil obtained from the waste treatment process. Oil Chem's 2008 application did not disclose that Oil Chem was receiving landfill leachate and discharging it into the sanitary sewer to the City of Flint's POTW.

17. Based on Oil Chem's 2008 application, the City of Flint issued a permit under permit number 5-04-02-01-O031 to Oil Chem that was effective between November 1, 2009, and October 31, 2014.

18. On September 4, 2014, the City of Flint updated the effective period of Oil Chem's permit to cover the period from October 30, 2014, to October 31, 2015.

19. Section III(A)(4)(b) of Oil Chem's permit stated that the permit only authorized discharge, via an access point described as outfall # 001, to the City of Flint sanitary sewer of certain wastewater, including centralized waste treatment wastewater, generated by the on-site treatment of oily wastes; certain storm water;

7

and detergent production cleaning wastewater re-used for cleaning the central waste treatment facility.

20.    Oil Chem's permit did not authorize the discharge of landfill leachate into the City of Flint's sewer system. Section III(A)(4)(c) of Oil Chem's permit stated that the permit does not authorize the discharge of any centralized waste treatment wastewater generated by the treatment of metal-bearing wastes or organic wastes via any outfall to any City of Flint sanitary sewer. Section III(A)(4)(a) of Oil Chem's permit specifically defines organic wastes as including landfill leachate.

21.    Section III(A)(4)(c), along with sections I(B)(3) and I(B)(8), of Oil Chem's permit also provided that if Oil Chem ever intended to discharge such other wastewater from the treatment of metal-bearing or organic wastes, it was required to notify the City of Flint by submitting a written Changed Discharge Notice 180 days in advance of any anticipated change. Oil Chem was also required to submit a Baseline Monitoring Report for any new source of discharge, including information such as results of sampling and analysis of the new waste stream and estimated volume of waste, at least 90 days in advance of commencing the new discharge.

22. Section I(B)(1) of Oil Chem's permit required Oil Chem to submit Self-monitoring Reports to the City of Flint, which must include, among other things, the measured discharge volume of wastewater for each reporting period.

23. Section I(B)(2) of Oil Chem's permit required Oil Chem to submit an Annual Significant Non-domestic User Report to the City of Flint. This report was to provide, among other things, updated information about Oil Chem's business activities and materials which are or may be discharged to the POTW.

## OIL CHEM LEACHATE OPERATIONS

24. Between in or about January 2007 and in or about October 2015, in the State and Eastern District of Michigan, Oil Chem accepted tanker truckloads of landfill leachate from eight different landfills. Each of these tanker truckloads was accompanied by a manifest documenting, among other things, the date of transport and volume of leachate delivered to the Oil Chem Facility. These manifests documented the transport of landfill leachate to the Oil Chem Facility in or about the amounts described below:

| *YEAR* | *TOTAL ANNUAL VOLUME OF LANDFILL LEACHATE (Gallons)* |
|---|---|
| 2007 | 1,094,600 |
| 2008 | 1,003,300 |
| 2009 | 377,800 |
| 2010 | 1,854,146 |
| 2011 | 3,995,363 |
| 2012 | 7,145,502 |

| | |
|---|---|
| 2013 | 8,533,845 |
| 2014 | 13,252,574 |
| 2015 | 10,567,163 |
| **Total** | ***47,824,293*** |

25. The landfills described above paid Transport Company 1 to remove accumulated landfill leachate from the various landfill sites using tanker trucks. Transport Company 1 then paid Oil Chem to dispose of the landfill leachate.

26. Transport Company 1 delivered the landfill leachate from landfill sites to the Oil Chem Facility. Upon arriving at the Oil Chem Facility, the Transport Company 1 driver pumped the landfill leachate from the Transport Company 1 tanker truck into Tank 103 at the Oil Chem Facility.

27. Employees of Oil Chem, at the direction of defendant Massey, routinely attached a hose to Tank 103 and directed the hose into an access point, described in Oil Chem's permit as outfall # 001, to the City of Flint sanitary sewer system. They then opened the valve at Tank 103 so that the untreated landfill leachate would drain directly from the tank into the City of Flint's sanitary sewer system, which discharged into the City of Flint's POTW. Oil Chem employees routinely performed this activity at or around the close of business for the day, allowing the landfill leachate to flow into the sanitary system overnight.

28. Oil Chem discharged all or substantially all of the landfill leachate it received, as enumerated in paragraph 24, to the City of Flint sanitary sewer system in this manner.

29. The landfill leachate from one of the landfills whose leachate was discharged by Oil Chem contained a chemical from a class of chemicals called polychlorinated biphenyls (PCBs), which are known to be hazardous to human health and the environment. Oil Chem did not treat or process the landfill leachate to remove any chemicals, but discharged it untreated to the sanitary sewer system.

30. Oil Chem did not disclose in any of its permit applications, periodic Self-monitoring Reports, or Annual Significant Non-domestic User Reports submitted to the City of Flint that it was receiving leachate landfill and discharging it to the City of Flint's sanitary sewer system.

31. Oil Chem did not submit a Changed Discharge Notice or Baseline Monitoring Report to the City of Flint prior to discharging landfill leachate to the City of Flint's sanitary sewer system.

32. Oil Chem did not include in its discharge volume reports to the City of Flint the increase in volume of its discharge as a result of its discharging the landfill leachate to the sanitary sewer system.

# COUNT ONE
## 33 U.S.C. § 1319(c)(2)(A) - Knowing Violation of the Clean Water Act

33. The allegations in paragraphs 1 through 32 are incorporated into this count by reference.

34. From on or about December 31, 2014, to on or about October 27, 2015, in the Eastern District of Michigan, defendant, Robert J. Massey, knowingly violated a requirement imposed in a pretreatment program approved under the Clean Water Act, 33 U.S.C. § 1342(b)(8), by knowingly discharging landfill leachate to the City of Flint's sewer system, in violation of sewer use permit number 5-04-02-01-O031.

All in violation of Title 33, United States Code, Section 1319(c)(2)(A).


MATTHEW SCHNEIDER
United States Attorney


ANTHONY VANCE
Chief, Branch Offices


*/s/ Ann Nee*
ANN NEE
Assistant United States Attorney


*/s/ Jules M. DePorre*
JULES DEPORRE
Assistant United States Attorney

JONATHAN D. BRIGHTBILL
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division

*Kris Dighe w/ permission*
_____
KRISHNA DIGHE
Senior Counsel
Environmental Crimes Section


Dated: December 21, 2020

**Companion Case information MUST be completed by AUSA and initialed.**

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** |
| ☐ Yes   ☑ No | **AUSA's Initials:** AN |

**Case Title:** USA v. ROBERT J, MASSEY

**County where offense occurred :** GENESEE

**Check One:**   ☑ Felony   ☐ Misdemeanor   ☐ Petty

   X Indictment/____Information --- **no** prior complaint.
   ____Indictment/____Information --- based upon prior complaint [**Case number:** _____]
   ____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:** _____   **Judge:** _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

December 21, 2020
Date

*Ann Nee*

Ann Nee
Assistant United States Attorney
210 Federal Building
600 Church Street
Flint, Michigan 48502
Telephone: (810) 766-5177
Email: Ann,Nee@usdoj.gov
P81487

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

03/11/2013